602 A.2d 1364

**Mary C. BRANDT, Appellant,**

v.

**Perry A. EAGLE, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed Feb. 18, 1992.

Robert J. Goduto, Harrisburg, for appellant.

Randall G. Gale, Harrisburg, for appellee.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

BECK, Judge:

The issue is whether a plaintiff who has marked satisfied a judgment against one tort-feasor for less than the full amount of the judgment is barred from maintaining a second action against another tort-feasor for the same harm. We granted en banc reconsideration of this appeal to consider the effect of a recorded satisfaction of judgment. We conclude the trial court was correct in granting summary judgment to defendant and in dismissing appellant's second action.

The appeal is taken from an order granting summary judgment in favor of appellee, Perry A. Eagle, M.D., in a medical malpractice action. The basis of the action was Dr. Eagle's alleged negligence in treating appellant, Mary C. Brandt, after she had been injured in a 1976 automobile accident. Appellant contends that the court below erred in determining, as a matter of law, that the suit against Dr. Eagle was barred. The ground for the trial court's decision was that appellant had recovered a judgment in a previous action she had brought against the driver of the vehicle who caused her initial injuries, had then settled that action for an amount less than the judgment and marked the judgment satisfied of record.

On August 30, 1976, appellant was involved in a two-car automobile accident in which she sustained injuries to her neck and back. As a result of these injuries, appellant underwent an anterior cervical discectomy and fusion in March, 1977. In November, 1978, appellant underwent a second anterior cervical discectomy and fusion involving a different portion of her spine. The operations were performed by appellee Dr. Eagle and Ivan L. Butler, M.D. In 1978, appellant brought an action against Theodore W. Copp, the driver of the other vehicle in the 1976 accident. At the trial, evidence was presented concerning appellant's initial injuries as well as her pain and suffering following the operations. Appellant recovered a verdict in the amount of $148,251.00.

In February 1981, appellant filed the present lawsuit against Dr. Eagle.[1] Appellant's complaint alleged, *inter alia*, that during the second operation Dr. Eagle negligently severed her lateral femoral cutaneous nerve while he was excising the bone graft from her right iliac crest, and that this negligence resulted in permanent injury. While this suit was pending, on May 23, 1985, appellant and Copp, the defendant in the first action, arrived at a settlement. Ap-

1. Dr. Butler was also named as a defendant, but the claim against him was later dismissed and he is not a party to this appeal.

pellant received the settlement proceeds and the docket in that case was marked "satisfied."

In November 1986, by leave of court, Dr. Eagle filed new matter in this action, alleging that the "unconditional satisfaction" of the judgment against Copp barred a subsequent suit against any other defendant for the same harm. In her reply, appellant alleged that the judgment against Copp was not actually fully satisfied because she had received only the agreed settlement amount, i.e. $25,000, and not the full amount of the verdict. Thus, she argued that the first suit did not bar this action against Dr. Eagle. Dr. Eagle then filed a motion for summary judgment, premised on the prior satisfaction. The trial court initially denied the motion, finding that appellant had not presented evidence of the full extent of her injuries in her action against Copp and, therefore, that she could proceed in her action against Dr. Eagle in an attempt to recover for additional injuries not addressed in the Copp action.

However, after further factual development, including production of the complete transcript of the Copp trial, Dr. Eagle renewed his motion for summary judgment. Following briefing and its own review of the trial transcript, on November 27, 1989, the trial court issued an order and opinion granting Dr. Eagle's motion for summary judgment. The court opined that after its review of the Copp transcript it was apparent that appellant had in fact presented evidence of all of her injuries arising from the accident *and* from both subsequent operations in the Copp action. The trial court thus reasoned:

... there remains no damages that could be submitted to the present jury that were not submitted in the original jury trial. Thus, the Court's original decision to permit Plaintiff to proceed with her lawsuit against the doctor was based on an improper premise, i.e., that there were damages which had not been presented to the original jury.

Since Plaintiff has proceeded against a Defendant, submitted all damages to a jury in a lawsuit against that

Defe[n]dant, and then settled and satisfied the docket, Plaintiff is precluded from proceeding against any other Defendant for the same injuries and damages.

Trial Court Opinion at pp. 3–4.

Appellant filed this timely appeal from the trial court order granting summary judgment in favor of Dr. Eagle.

Our standard of review of a grant of summary judgment is well-settled:

As an appellate court, we are bound to consider certain principles which dictate when and under what circumstances a trial court may properly enter summary judgment. *Goebert v. Ondek*, 384 Pa.Super. 100, 103–04, 557 A.2d 1064, 1066 (1989). .... Summary judgment should not be entered unless the case is clear and free from doubt. *Hathi v. Krewstown Park Apartments*, 385 Pa.Super. 613, 615, 561 A.2d 1261, 1262 (1989). A grant of summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file support the lower court's conclusion that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035, 42 Pa.C.S.A.; *Hatter v. Landsberg*, [386 Pa.Super. 438, 440, 563 A.2d 146, 147–48 (1989)]. *See Penn Center House, Inc. v. Hoffman*, 520 Pa. 171, 176, 553 A.2d 900, 903 (1989) (entire record before lower court must be thoroughly examined and all doubts as to the existence of a genuine issue of material fact are to be resolved against a grant of summary judgment). We will overturn a trial court's entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *McCain v. Pennbank*, 379 Pa.Super. 313, 318, 549 A.2d 1311, 1313 (1988).

*O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 434–35, 567 A.2d 680, 682 (1989).

Appellant makes a single argument on appeal—that she should not be barred from proceeding with her action against Dr. Eagle because despite the recording of a satisfaction of judgment in the first action, she never actually

received the full value of that judgment.[2]  She argues that since she accepted a settlement for less than the full amount of the judgment she should be permitted to proceed against Dr. Eagle in an attempt to recover the full value of her claim.  We disagree.

There are important policy reasons and much wisdom behind the traditional rule that a plaintiff who records a satisfaction of judgment must treat that satisfaction as his or her commitment that the judgment has been fully satisfied.  Judgments are frequently satisfied for less than their face value.  The parties mutually agree that the plaintiff will accept less than he or she was entitled to under the judgment.  The law encourages these as well as other settlements to end disputes between parties.  To permit the plaintiff to later question the satisfaction on the basis of sufficiency of the consideration that she accepted in full satisfaction of the judgment would create uncertainty and unpredictability.  It would erode the integrity of official public records.  We see no reason to accord less respect for official public records than we would for promises between private parties.

The common law has traditionally attached great significance to the entry of a satisfaction of judgment.  A plaintiff who is injured at the hands of more than one tort-feasor may sue and recover a judgment against any one or all of the tort-feasors and may attempt to collect the damages awarded by the judgment against any one or all of them.  However, although a plaintiff may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm.  *See Thomp-*

2.  Appellant also suggests that the trial court erred in entering summary judgment for Dr. Eagle because, in fact, she did not present evidence of the full extent of her injuries in the first trial and, thus, her later action against Dr. Eagle is not a second action seeking damages for the "same harm".  This claim is not included in appellant's Statement of Questions involved and, therefore, is waived.  *See* Pa.R.A.P. 2116(a); *Vaskie v. West American Ins. Co.,* 383 Pa.Super. 76, 80 n. 1, 556 A.2d 436, 438 n. 1 (1989).  In addition, even if this issue had not been waived, our review convinces us that appellant's argument is clearly meritless.

*son v. Fox,* 326 Pa. 209, 192 A. 107 (1937); *Franklin Decorators, Inc. v. Kalson,* 330 Pa.Super. 140, 479 A.2d 3 (1984). The rationale underlying this rule is clear—the remedy provided to an injured person is to receive only one full compensation for the wrong done to him. *Thompson, supra.* Moreover, once the judgment is marked satisfied, the plaintiff is legally barred from further recovery against any of the tort-feasors because the law presumes that full satisfaction for the harm incurred has been received. *Hilbert v. Roth,* 395 Pa. 270, 149 A.2d 648 (1959).

Appellant argues, however, that the important inquiry is not whether the plaintiff has marked the judgment satisfied, but rather whether the full amount of the judgment was *actually* received by the plaintiff. There is no support for this in the cases relied upon by appellant. For example, appellant contends that in *Hilbert v. Roth, supra,* the court held that a second action for damages for the same harm would not be barred unless *two* requirements were met— the judgment in the prior suit must have been marked satisfied *and* the plaintiff must in fact have received payment of the full amount of the judgment before a second action for damages for the same harm would be barred.

We do not read *Hilbert* as imposing these requirements. In *Hilbert,* the Court expressly stated that where a plaintiff has satisfied a judgment entered after an adversary trial, the common law presumption that he is satisfied will operate. *Id.,* 395 Pa. at 275, 149 A.2d at 651–52. The Court did not carve out any exception for a case where a plaintiff recovers a judgment after an adversary trial, accepts less than the full judgment amount in total satisfaction of the judgment, and then marks the judgment satisfied. In fact, the court's language suggests the contrary. The court opined that the satisfaction of the judgment raises a presumption of full satisfaction and made no mention of permitting a plaintiff to rebut the presumption by showing that he or she had not in fact received the full amount of the judgment. As the Third Circuit in *Frank v. Volkswagenwerk A.G.,* 522 F.2d 321, 326 (3d Cir.1975), has stated in

construing Pennsylvania law, "[w]here the . . . satisfaction occurred after an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive."

Appellant also argues that the case of *Blanchard v. Wilt,* 410 Pa. 356, 188 A.2d 722 (1963), suggests that a court may look beyond a recorded satisfaction of judgment to determine whether the plaintiff actually received the full amount of the judgment before marking it satisfied and that where such full receipt is not found, the satisfied judgment will not bar a subsequent suit against another tort-feasor for the same harm. This is not what *Blanchard* holds or even suggests.

In *Blanchard,* the plaintiffs employed a general contractor, Wilt, to do construction work on their home. Wilt hired Nehrig as a subcontractor on the project. The home burned down, allegedly due to the negligence of Wilt and Nehrig. Independent actions were commenced against Wilt and Nehrig. The action against Wilt was tried first and resulted in a compulsory nonsuit. The action against Nehrig was then called for trial, but pursuant to a settlement between the parties the jury was instructed to enter a consent verdict for plaintiffs in an amount less than the amount sought. A receipt of payment of the settlement amount was filed of record, the *verdict* was marked satisfied, and the action discontinued. No judgment was ever entered on the consent verdict and, therefore, no judgment was ever marked satisfied. The nonsuit against Wilt was then reversed on appeal and the case remanded for trial. On retrial, Wilt argued that the suit against him was barred by the consent verdict, marked satisfied, in the suit against Nehrig.

The Supreme Court disagreed, but *not* because the amount actually received by the plaintiffs in the Nehrig suit had been less than the amount of any judgment they had satisfied against Nehrig. As stated above, plaintiffs had never entered judgment against Nehrig and, therefore, obviously had never satisfied a judgment against him. Rather, the Supreme Court specifically distinguished a case, like

*Hilbert, supra,* where a judgment is marked satisfied, stating:

> Nor can we agree with appellants that the satisfaction of the consent verdict was a satisfaction of a judgment thereby bringing the case under the rule of *Hilbert v. Roth,* supra. The verdict against Nehrig was not reduced to judgment and no judgment was ever entered against him. Even if judgment had been entered against Nehrig, appellants would not be discharged since, "The recovery of a judgment by the injured person against one joint tortfeasor does not discharge the other joint tortfeasor" ... more importantly, *no judgment* against Nehrig was ever *satisfied.* In *Hilbert,* supra, *judgment was entered and satisfied after an adversary action on the merits.* The court was justified in assuming therein that the judgment represented the true value of the claim.

*Id.,* 410 Pa. at 360, 188 A.2d at 725 (emphasis in original).

Clearly *Blanchard* concerns the effect of a satisfaction of a consent verdict and not the effect of a satisfaction of a recorded judgment entered after an adversary proceeding. As the *Blanchard* court itself stated, a consent verdict and a judgment entered after an adversary proceeding are significantly different in that the former is not a legal determination of the matters in controversy whereas the latter is the final and complete adjudication of those matters. *Id.,* 410 Pa. at 360, 188 A.2d at 725. Given this marked difference, it is perfectly logical to conclude, as did the *Blanchard* court, that there is a corresponding difference between the effect of a satisfaction of a consent verdict and of a judgment. In sum, since *Blanchard* addressed only the effect of a satisfaction of a consent verdict, it is inapposite to the issue presented in this case.

In addition to the clear import of the cases discussed above, the more recent case of *Hazelwood Lumber Co., Inc. v. Smallhoover,* 500 Pa. 180, 455 A.2d 108 (1983), is particularly instructive on the question of the significance of a recorded satisfaction of a judgment. In *Hazelwood,* a judgment recovered by plaintiff was marked satisfied on

the record by a party representing himself to be the agent of the plaintiff. The purported agent had entered into a settlement with the defendants pursuant to which an amount less than the full amount of the judgment would be accepted in full payment thereof. The purported agent received payment of the settlement amount and marked the judgment satisfied. Plaintiff contended that the party who had marked the judgment satisfied had no authority to do so and, moreover, that plaintiff had never actually received the settlement payment. The trial court found that the purported agent did have apparent authority to act on behalf of the plaintiff and held that the amounts paid were to be deemed received by plaintiff. However, the trial court struck the recorded satisfaction of judgment and reinstated the judgment for the balance due after deduction of the settlement amount. The court did so in reliance on an old common law rule that prohibited an accord and satisfaction of the amount due on a judgment by payment of less than the liquidated value of the judgment.

The Supreme Court reversed, overturning the traditional prohibition of an accord and satisfaction under such circumstances. The court did so because of its concern that to allow a court to look beyond a formally recorded satisfaction of judgment would undermine our legal system. The *Hazelwood* court expressed this concern as follows:

> We believe this old common law rule ..., should have no application to the satisfaction of a judgment entered on judicial records under current conditions. ... it is a hindrance to our present legal system if allowed to prevent an otherwise valid record satisfaction of a judgment.

> ....

As stated in *Schwartz v. California Claim Service*, 52 Cal.App.2d 47, 125 P.2d 883 (1942),

> [t]he satisfaction of judgments for less than their face value is of every day occurrence, and since every such settlement represents an agreement mutually satisfactory to the parties and fraught with some benefit to

each, it should not be the policy of the law to discourage such sensible arrangements under which a creditor can satisfy a judgment for what he thinks it is worth and a debtor can settle it for what he can afford to pay.

*Id.* at 55, 125 P.2d at 888.

. . . .

A formal entry of satisfaction upon public court records should ... be free of later questions concerning the lack or sufficiency of the consideration found in the agreement for entry of satisfaction. The respect and solemnity accorded official public records should not be less than that given promises between private parties....

*Id.* 500 Pa. at 184, 455 A.2d at 110.

Although *Hazelwood* specifically decided that a plaintiff may not recover additional amounts from a defendant against whom a judgment is recovered when the plaintiff has already agreed to accept less than the full amount and marked the judgment satisfied, it is nonetheless pertinent to the issue before us in the instant case. The Supreme Court's language in *Hazelwood* could not be clearer in its confirmation of the traditional significance accorded to a recorded satisfaction of judgment and of the goals of certainty and predictability that are served by according that significance. We are not free to fashion an exception to this principle. Appellant's protestation that she should not be barred from prosecuting her second action because to bar her from doing so would unfairly deny her full compensation for the harm she has suffered is unpersuasive. It was appellant who chose to accept less than the full amount of her judgment in the first action as full satisfaction of that judgment and to mark it satisfied. Absent an allegation of fraud or mistake in entering the satisfaction, and there is no allegation of either in this case, the satisfied judgment represents full satisfaction of appellant for the harm alleged. *Neustein v. Insurance Placement Facility,*

271 Pa.Super. 126, 412 A.2d 608 (1979). It cannot be inquired into further.

The order of the trial court is affirmed.

TAMILIA, POPOVICH and HUDOCK, JJ., join this Opinion.

WIEAND, J., files a Concurring Opinion in which TAMILIA, J., joins.

JOHNSON, J., files a Dissenting Opinion in which McEWEN, OLSZEWSKI and DEL SOLE, JJ., join.

WIEAND, Judge, concurring:

I agree with the majority that the present action by Mary C. Brandt, appellant, against Dr. Perry A. Eagle, M.D., appellee, is barred and that the trial court, therefore, properly entered summary judgment in favor of the defendant-appellee. My reasoning differs only slightly from that of the majority.

Brandt was injured in a two car accident and filed suit against the driver of the other vehicle. In that action she was entitled to recover for all injuries sustained, including any which may have been caused or aggravated by professional negligence in treating such injuries. See: *Boggavarapu v. Ponist*, 518 Pa. 162, 165, 542 A.2d 516, 517 (1988); *Nathan v. McGinley*, 342 Pa. 12, 16, 19 A.2d 917, 918 (1941); *Thompson v. Fox*, 326 Pa. 209, 212, 192 A. 107 (1937), citing *Wallace v. Pennsylvania R.R. Co.*, 222 Pa. 556, 564, 71 A. 1086 (1909) and *Wyatt v. Russell*, 308 Pa. 366, 162 A. 256 (1932); *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 175, 390 A.2d 765, 771 (1978); *Lebesco v. Southeastern Pa. Transp. Auth.*, 251 Pa.Super. 415, 422, 380 A.2d 848, 852 (1977). See also: Restatement (Second) of Torts, § 457. Following trial of the action against the other driver, Brandt recovered a judgment in the amount of $148,251.00. This judgment was fully, not partially, satisfied on the prothonotary's record. Brandt then attempted to pursue an action against Dr. Eagle in which she claimed

that he had negligently treated her for injuries sustained in the two car collision.[1]

The parties are agreed that the satisfaction of a judgment recovered against one tortfeasor bars a later suit against a second tortfeasor for the same injury. See: *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959). This rule also prevents a second action against a physician for negligent treatment of injuries sustained in the accident and recoverable in the first action. See: *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937). The principles of law announced in these cases, in my judgment, are controlling.

Appellant argues that an exception to these general principles should be created where the first judgment is satisfied for less than the full amount of the judgment. The cases do not recognize such an exception, and, in my opinion, none should be recognized. The record in the instant case discloses to anyone who examines it that appellant's judgment compensating her for injuries sustained in the accident was satisfied in full. That satisfaction is conclusive. "When the plaintiff has [the judgment] marked satisfied of record the common law assumption that [s]he is satisfied may reasonably be permitted to operate." *Hilbert v. Roth, supra* 395 Pa. at 275, 149 A.2d at 652. The presumption of full satisfaction cannot be rebutted by parol evidence that the judgment holder accepted something less than the full amount of the judgment before satisfying it. *Hazelwood Lumber Co., Inc. v. Smallhoover*, 500 Pa. 180, 455 A.2d 108 (1982). See also: *Frank v. Volkswagenwerk A.G.*, 522 F.2d 321 (3d Cir.1975);[2] *Neustein v. Insurance*

1. The second action had been commenced after the verdict in the prior action but before satisfaction of the judgment entered on such verdict.

2. In arguing that the presumption can be rebutted by parol evidence that the plaintiff failed to receive payment of her judgment in full, the dissent relies upon the decision of the Court of Appeals in *Frank v. Volkswagenwerk A.G.*, 522 F.2d 321 (3d Cir.1975). This reliance is misplaced. In that case there had been no prior adversary action which had resulted in a judgment on the merits. In the instant case, the judgment which the plaintiff satisfied had followed an adversary proceeding on the merits. Under these circumstances the *Frank*

*Placement Facility,* 271 Pa.Super. 126, 412 A.2d 608 (1979). In this regard, I agree fully with the majority and join its review of the decided cases.

TAMILIA, J., joins.

JOHNSON, Judge, dissenting:

The "one satisfaction" rule bars a pending suit against another tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim. Moreover, the evidence and facts upon which the plaintiff would proceed in the present action have not, as yet, been recorded. Until all of that evidence is marshalled, neither the trial court nor this court could reasonably reach any conclusion as to the existence of the "same harm". The record is clear that the plaintiff, Mary C. Brandt, only received a small percentage of the total judgment rendered in the first suit. I therefore find neither a "satisfaction" nor the "same harm", both of which are necessary to bar future recovery. I must respectfully dissent. I would remand for trial.

The result reached by the Majority is not supported by prior case law and is inconsistent with the public policy surrounding personal injury liability. The proper role of both the trial judge and the reviewing court are critical where the action under review is an order granting summary judgment and the matter involves an understanding and appraisal of two separate lawsuits. I believe the Majority has glossed over these roles and has improperly assumed that there are no genuine issues of material fact.

Our Supreme Court has recently set forth the principles governing the grant or denial of a motion for summary judgment as follows:

> court's decision would have been different, for even that court acknowledged that in Pennsylvania, "[w]here the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive." *Id.* at 326.

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of summary judgment may be granted only in cases where the right is clear and free from doubt.... The moving party has the burden of proving the nonexistence of any genuine issue of material fact.... The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party....

Rule 1035 also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.* If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d) (Emphasis added). Therefore, where a motion for summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial....

*Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991) (citations omitted) (emphasis in original). As to our scope of review, we will overturn entry of summary judgment by the trial court only if there has been an error of law or a clear abuse of discretion. *Tonkovic v. State Farm Mutual Automobile Ins. Co.,* 407 Pa.Super. 522, 524, 595 A.2d 1269, 1270 (1991). With these basic principles in mind, my review of the matter now before us compels me to conclude that summary judgment should not have been granted.

The Majority is correct in stating that an injured party is entitled to only "one satisfaction" for "the same harm." I must disagree with my colleagues both as to (1) what constitutes "satisfaction" and (2) precisely what is that "same harm" in the case now under review. My review of the cases relied upon by the Majority leads me to a different conclusion.

Beginning with the case of *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937), I find the earlier cases to be distinguishable from our present problem. *Thompson* did, indeed, involve a subsequent action against a treating physician, George T. Fox, M.D., after the injured party first sued the driver of the automobile which struck him. Thompson settled that first case against the driver, one Taylor, for $2400. In *Thompson*, however, our Supreme Court was reviewing whether the trial judge committed error by (1) giving binding instructions for the defendant physician, *after the close of all evidence in the second trial*, and (2) awarding judgment on the directed verdict. From the opinion, we learn that the plaintiff Thompson remained under the care of Fox only until May, 1933, a period of six months following the accident but fully five months before any action was brought in the first suit against the driver, Taylor. Thompson settled the first suit in July 1934 and did not even institute the second suit, *Thompson v. Fox*, until March 4, 1935.

In pertinent part, the *Thompson* court stated:

Such being the law, for the final condition of his hip plaintiff could have sued, and did sue, Taylor; for the aggravation of the original condition plaintiff could have sued, and did sue, defendant [Fox]. He could have pursued both actions to judgment. *For the same injury,* however, *an injured party can have but one satisfaction and the receipt of such satisfaction,* either as payment of a judgment recovered or consideration for a release executed by him, from a person liable for such injury, *necessarily works a release of all others liable for the same injury and prevents any further proceed-*

*ing against them* ... [B]ecause the principle which underlies the rule is that *the injured person is given a legal remedy only to obtain compensation for the damage done to him,* and *when that compensation has been received* from any of the wrongdoers, *his right to further remedy is at an end* ... Since plaintiff, by settling with Taylor, was compensated for all injuries, both those originally and those ultimately arising out of the accident, including the aggravation of the hip condition by defendant's [Fox's] alleged negligence, he cannot obtain from defendant *a second satisfaction for the same damage.* *Thompson v. Fox*, 326 Pa. at 212–13, 192 A. at 109 (emphasis added).

Unlike the facts in *Thompson,* we are here faced with a situation where there has been no trial on the merits of the claim against the defendant physician, and the respondent to the motion for summary judgment has expressly denied that the filing of a certificate of satisfaction in the case of *Brandt v. Copp,* No. 78–S–1679, C.C.P., York Cty. (C.A.-Law, 1978) (the first suit), represents a complete and full satisfaction of her claim. On the contrary, Brandt claims in her Answer that the amount received from Copp is only "a small percentage of the total judgment rendered." Answer to Motion, etc. filed October 13, 1987, ¶ 6, at page 1.

Given this assertion by Brandt, it would necessarily follow that we could not conclude, on a motion for summary judgment, that Brandt has already received her "satisfaction." This would remain true even if we were to speculate that the "harm" is the "same", since we are without benefit of a trial record as was available to the trial court in *Thompson.*

The Majority looks for support for its conclusion that Brandt is barred from further recovery in the early Supreme Court case of *Hilbert v. Roth,* 395 Pa. 270, 149 A.2d 648 (1959). The Majority dismisses Brandt's analysis of the *Hilbert* case. That analysis read *Hilbert* as holding that a second action for damages for the same harm will not be barred unless a judgment in the prior suit is marked satis-

fied and the plaintiff receives payment for the full amount of the judgment. In rejecting this interpretation the Majority refers to language in *Hilbert* which states that where a plaintiff has satisfied a judgment entered after an adversary trial, the common law presumption that plaintiff has been satisfied will operate. The language in *Hilbert* which is highlighted by the Majority is not inconsistent with the interpretation offered by Brandt.

Although the court did not, as the Majority suggests, carve out any exception for a case such as this where a plaintiff accepts less than the full amount deemed due her by the terms of a jury verdict and then marks the judgment satisfied, these facts were not present in *Hilbert*. First, *Hilbert v. Roth* involved the construction to be placed upon Sections 3 and 4 of the Uniform Contribution Among Tortfeasors Act of 1951, July 19, P.L. 1130 (formerly 12 P.S. §§ 2084, 2085); *now* Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. §§ 8321–8327. In *Hilbert*, judgment was entered on a jury verdict, it was paid and then plaintiff caused the judgment to be marked satisfied of record. In ruling that the plaintiff was not entitled to bring suit against a second tort-feasor the court remarked:

> It is clear that under the common law of Pennsylvania plaintiff could bring separate actions against several defendants for a joint trespass, obtain judgment against each and issue execution on the one he found most satisfactory; but once he *received* satisfaction, and either gave a release or satisfied the judgment of record, he could not thereafter execute or bring action against any other defendants.

*Id.,* 395 Pa. at 272, 149 A.2d at 650 (emphasis added, citations omitted).

The language in *Hilbert* referred to by the Majority bolsters the conclusion that the law finds it necessary for the plaintiff to have been fully compensated before the entry of a satisfaction of judgment will operate as a bar to an attempt to receive full recovery from a second tort-feasor. The court specifically stated:

With respect to a satisfaction of judgment, however, particularly where, as here, it follows an adversary trial in which plaintiff proved his damages, it may more safely be assumed that the judgment does represent the true value of the claim and therefore, when the plaintiff has it marked satisfied of record, the common law assumption that he is satisfied may reasonably be permitted to operate.

*Id.,* 395 Pa. at 275, 149 A.2d at 651–52.

The language of *Hilbert* is consistent with a conclusion that plaintiff should be permitted to seek a full recovery by pursuing an action against a second tort-feasor where he or she has not received the full amount of a jury award, despite the fact that a satisfaction of judgment has been entered on the record. As the *Hilbert* court notes, the action of having a judgment marked satisfied creates an assumption that plaintiff is, in fact, fully satisfied. However, an assumption is not a conclusion and certainly not an irrefutable conclusion. In a case such as this where plaintiff is readily able to establish that she has not received full compensation as she is due by the terms of the jury verdict, she should be entitled to seek recovery from a second tortfeasor. Absent payment of the original judgment in full, and evidence that the two actions clearly involve the same harm, plaintiff should not be barred from proceeding in her efforts to seek a complete recovery against another tort-feasor.

This conclusion is in keeping with the concept and spirit of personal injury liability, the goal of which is to protect injured parties. Where appropriate, an injured party must be entitled to seek full and complete compensation for the injuries suffered. Permitting the second suit to go forward in the instant case does not compromise the satisfaction obtained from the operator of the car. The satisfaction already obtained will not be jeopardized by permitting plaintiff to seek to recover the entire amount due her for injuries she suffered as a result of the negligence of others.

The result I suggest, which favors the public policy behind personal injury law, is not at odds with our Supreme Court's recent pronouncement in *Hazelwood Lumber Co., Inc. v. Smallhoover*, 500 Pa. 180, 455 A.2d 108 (1983), upon which the Majority relies to support its conclusion. In *Hazelwood* the court held that the integrity of a satisfaction could not be questioned as between a debtor and the creditor from whom the satisfaction was obtained. Such is not the situation in the instant case. Here, as in *Hilbert*, there exist two distinct tort-feasors. In *Hazelwood*, it was only necessary to rule that a satisfaction which is marked of record must act as a conclusion to the litigation between the two parties instantly involved. However by permitting the second suit in this case to proceed against the doctor, we would in no way be compromising the satisfaction entered against the driver, Copp, and would not be ruling in a manner inconsistent with the *Hazelwood* decision.

In order to more fully understand, and apply, *Hilbert*, upon which the Majority so strongly relies, we can look to a case from our Court of Appeals for the Third Circuit. The case is cited by the Majority on this appeal for the limited proposition that "[w]here the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive." *Frank v. Volkswagenwerk, A.G. of West Germany*, 522 F.2d 321, 326 (1975). The Majority ignores the careful analysis by Circuit Judge Hunter, immediately preceding the quoted passage, wherein the Third Circuit considers both *Hilbert v. Roth* and *Blanchard v. Wilt*, 410 Pa. 356, 188 A.2d 722 (1963).

After reviewing the history of Pennsylvania law following the enactment of the 1951 Uniform Act, *supra*, and in rejecting the auto manufacturer's claim that the marking of a docket "settled, discontinued and ended" *necessarily* bars a later suit against a different tortfeasor, Judge Hunter stated:

We believe that this passage [from *Blanchard v. Wilt*], especially the last three sentences, expresses a

significant change in Pennsylvania law and is language that we cannot disregard. As noted previously, the cases prior to the enactment of the Uniform Act had applied the "one satisfaction" rule even where a settlement had been reached prior to proceeding to verdict. *Thompson v. Fox, supra;* ... The above passage from *Blanchard,* however, indicates that the "one satisfaction" rule bars a subsequent suit against another joint tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim. Where the prior satisfaction occurred after an adversary action on the merits, it is most permissible to conclude that there has been a full satisfaction. This reasoning in *Blanchard* is generally consistent with *Hilbert v. Roth, supra,* where the court stated [the language set forth in this Opinion, *supra,* slip opinion, at page 1367].

It is not clear from *Blanchard* and *Hilbert* whether the "one satisfaction" rule is now restricted to those cases in which the prior satisfaction followed an adversary action on the merits, and we need not so decide. *What does seem clear is that the court in the second suit must be satisfied that the prior proceedings, however resolved, were of such a nature that the presumption of full satisfaction can operate. Where the prior satisfaction was based on a judgment following an adversary action on the merits, the presumption of full satisfaction would appear to be conclusive. On the other hand, where there was no prior adversary action on the merits, as was the case here, we believe that the Pennsylvania courts would at least look closely at the circumstances of the prior settlement to see whether the satisfaction, in the words of Blanchard, "represent[ed] the true value of the claim."*

... [W]e do not believe that this is a case where the presumption of full satisfaction can be deemed to operate. The record in this case shows quite clearly that the settlement was sought, and entered into, because Frank's

parents and her attorney concluded that the most they could recover from Miller was the maximum coverage under his insurance policy available to the plaintiff.

*Frank*, 522 F.2d at 326–27 (emphasis added). In considering the policy issues, Judge Hunter went on to state, writing for the Third Circuit:

We do not believe that our result is unfair to defendant Volkswagenwerk or that we are permitting plaintiffs to continue suing different defendants until they recover what they believe is full compensation. Here the doubt as to whether the settlement represented the true value of the claim is raised by the circumstances surrounding the settlement itself, rather than evidence subsequently coming to light. Furthermore, defendant Volkswagenwerk concedes that Frank could have maintained this suit if she had signed a release discharging only Miller and his insurance company. *We do not see what policy is furthered by making the immunity of an alleged tortfeasor who was not a party to any prior proceedings depend on the fortuitous fact that a release had been signed ... we do not see how the absence of such a release could in any way have misled or prejudiced Volkswagenwerk, which was not a party to the earlier proceedings. Most importantly, we construe the Pennsylvania Supreme Court's most recent decision on the subject—Blanchard v. Wilt, supra—as playing down the importance of a release on the question of the right to bring a subsequent suit, and as requiring a consideration of whether the first proceedings resulted in an award representing the true value of the claim.*

*Id.* at 327 (emphasis added). I do not believe the *Frank* case, and Judge Hunter's analysis of Pennsylvania law, can be dismissed on the basis that the matter before the Third Circuit involved the court-approved settlement of a minor's claim, where the docket was marked "settled, discontinued and ended" as opposed to "satisfied."

In *Frank*, the representatives of the minor's estate settled the suit, and the court approved the settlement, for the

insurance policy limits, where the defendant would have been judgment proof. In the case we now review, the trial court recognized that Brandt had only received policy limits from the insurance company in the first action, but the trial court dismissed this fact as being "nowhere in the record of the original lawsuit which merely shows that it was settled and satisfied." Opinion, Chronister, J., dated January 5, 1987 [sic], filed January 6, 1988, page 3; R.R., page 76a. In rejecting this material fact alleged by Brandt, the trial court erred.

As part of her Answer to Motion for Summary Judgment, etc., Brandt denied that the Certificate of Satisfaction filed on May 23, 1985 represented the true value of the claim and went on to aver that she "only received a small percentage of the total judgment rendered in the *Brandt v. Copp* case." Answer to Motion, etc., filed October 13, 1987, page 1; R.R., page 55a. The trial court incorporated this finding into its Pre–Trial Order entered March 30, 1989, when it ruled, "That verdict was satisfied although it was not in fact paid in full." Order, Chronister, J., March 28, 1989, page 1. In her Motion to Enter Judgment, etc., filed June 19, 1989 [received by Judge Chronister on June 12, 1989], Brandt set forth that the verdict in the *Copp* case had been $145,000 (paragraph 2) and the subsequent garnishment proceedings against the insurer, Nationwide were settled for $25,000 (paragraph 4). In his Answer to that motion filed June 15, 1989, Dr. Eagle neither admitted nor denied the settlement, claiming to be without sufficient information to form a belief as to its truth. Nevertheless, Judge Chronister expressly adopted the factual statements contained in Brandt's Motion, including the statements regarding the verdict and settlement amounts. Opinion and Order, Chronister, J., dated June 13, 1989, filed June 19, 1989, page 1.

The trial court later reaffirmed this finding in its Opinion dated November 27, 1989, and filed November 28, 1989, when it ruled: "After negotiation Plaintiff's insurance company paid a settlement which represented only a small

portion of the jury verdict." This raised an issue of material fact, at the very least, to the extent that Dr. Eagle wished to dispute it, thereby rendering summary judgment in favor of Eagle, as movant, improper. Pa.R.C.P. 1035(c).

Because the trial court assumed that any evidence of "satisfaction" was sufficient, without regard to the extent of the recovery by the plaintiff, it failed to properly consider evidence that would have readily been available while the motion was under second consideration. Moreover, by limiting itself to what appeared of record in the first suit on the issue of satisfaction, the trial court turned its back on the specific facts pled by Brandt which raised a genuine issue for trial. Without the parties having agreed as to whether "satisfaction" occurred, the trial court improperly removed the matter from consideration based solely on the record in the first case, ignoring the pleadings and answers filed in the second case then before it.

The same conclusion reached by our Third Circuit Court of Appeals in *Frank*—the need to look closely to see whether the satisfaction represented the true value of the claim—was also determined by one of our courts of common pleas. In *Kimberly v. Moodey*, 54 Westmoreland L.J. 43 (1971), then-President Judge David H. Weiss had to determine whether the receipt of $40,000 by the plaintiff as settlement on an earlier $50,000 verdict would bar the plaintiff from proceeding against a second defendant. After reviewing both *Hilbert v. Roth* and *Blanchard v. Wilt*, Judge Weiss declared, speaking for the court *en banc:*

> The *Blanchard* case thus distinguishes the situations between *Hilbert* and *Blanchard*. The Blanchard case makes it clear that there must be the payment in full and satisfaction of a judgment against one tortfeasor after an adversary action on the merits without the element of consent between the parties to effect a bar against another tortfeasor ... The theory of the bar of the *Hilbert* case is that the plaintiff is entitled to only one satisfaction and where he receives that *in full* against one party, he cannot proceed further against another party ... Where

the sum of $40,000 was received on a $50,000 verdict and plaintiff has not received the full value of his claim as determined by a jury, under the circumstances here present, Moodey is not now entitled to raise the defense of payment in bar.

*Id.* at 45–46 (emphasis in original).

I conclude that the reasoning and conclusions of Judge Hunter, in *Frank,* and Judge Weiss, in *Kimberly,* represent the correct view and a more accurate restatement of Pennsylvania law. The "one satisfaction" rule should bar a subsequent suit against another tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim. The language in the *Blanchard* case compels the conclusion that it is not simply whether the docket has been marked "satisfied" but whether the injured party has recovered the full amount of his or her judgment. *Cf. Charles v. Giant Eagle Markets,* 513 Pa. 474, 522 A.2d 1 (1987); *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803 (1979); *see* Annotation, *Release of One Responsible for Injury as Affecting Liability of Physician or Surgeon for Negligent Treatment of Injury,* 39 ALR 3rd 260, 273–79, § 4 (1971).

The "common law assumption" referred to in *Hilbert v. Roth* is first an assumption that the judgment represents the "true value of the claim" because of the adversary nature of the trial. It is only after it has been established that the verdict was arrived at following an adversary proceeding that the second assumption, satisfaction in full upon marking the record, comes into play. The majority has not cited to any case, nor do I know of any, which would make the assumption of full satisfaction irrebuttable merely by virtue of a certificate having been filed. Where the facts are clear that the plaintiff received an insurance payout representing defendant's full coverage, and where that payout is materially less than the jury verdict, the entry of satisfaction in favor of the settling tortfeasor should not operate as a bar in favor of another tortfeasor who was not a party to the prior proceedings.

A proper understanding of the term "one satisfaction" as interpreted through *Blanchard, Frank,* and *Kimberly,* requires that the order granting summary judgment be reversed.

I turn now to the construction to be given the term "same harm." The Majority would dismiss Brandt's claim that the damages sought in the second action are not the "same harm" as in the first suit against Copp. By way of footnote 2, at Slip opinion page 5, the Majority states: "[O]ur review convinces us that appellant's argument is clearly meritless." The Majority does not disclose the documents that were considered or the analysis employed in that review. The trial court, in its final, November 27, 1989 opinion, sets forth:

> The only thing that has changed from the original trial is that the testimony now would show that Plaintiff *is* 100% disabled rather than that Plaintiff *might be* 100% disabled. It is, of course, impossible to know what determination the original jury made in regard to Plaintiff's disability.

Opinion, November 27, 1989, filed November 28, 1989, page 3, (emphasis in original). I would submit that *total* disability has *never* been accepted as the same harm as *partial* disability, everything else being equal. Moreover, whereas I would interchange the term "harm" with "injury", the trial court's analysis in rejecting Brandt's claim focuses exclusively on broad concepts of "damages." Thus, the trial court states:

> The Court has now received from counsel the transcript, and briefs on what issues were submitted to the jury. From a review of the transcript it is apparent that all of the *damages* in regard to the injury to Plaintiff's leg were submitted to the original jury ...

> As a result of this review of the transcript the Court is of the opinion that Plaintiff has already submitted to a jury her *damages* in the form of *future pain and suffering,* and her 100% *permanent disability.* Therefore, there remains [sic] no *damages* that could be submitted to

the present jury that were not submitted in the original jury trial. Thus, the Court's original decision to permit plaintiff to proceed with her lawsuit against the doctor was based on an improper premise, i.e., that there were damages which had not been presented to the original jury.

*Id.*, pages 3–4 (emphasis added).

Judge Chronister does not direct us to that place in the record from which he was able to conclude that the jury in the first case was advised of Brandt's "100% permanent disability." Dr. Thomas S. Ryscavage, an orthopedic surgeon, did testify as part of the plaintiff's case, as follows:

BY MR. McGINNIS [FOR THE PLAINTIFF]:

Q. Doctor, based on your treatment, do you have an opinion as to her prognosis insofar as her neck injury is concerned?

A. Yes, I do. I think we are dealing with a very difficult situation here.... Therefore, my prognosis for the neck injury is not going to be one of a full recovery. She is at this particular—I would consider her 100% disabled from any occupation and *if our treatment that we're trying to bring her through at this current time is successful,* the end point of that treatment I wouldn't expect to be complete recovery and *I think that we're still going to be talking about a 50% permanent disability from occupation that she previously held.*

. . . .

Q. But, *assuming that you would achieve maximum results, she would be, in your opinion, still 50% disabled?*

A. *That's correct.*

Q. In addition to that, you're treating her for a leg injury?

A. That's correct.

Q. What is your prognosis insofar as the leg injury is concerned?

A. I think that once the nerve is cut, you never get full function of that nerve, or almost never.... It's the pain that is associated with the neuroma that is the disabling factor and, that pain, I feel we can improve significantly. The time involved, I'm not sure. *But Mrs. Brandt is improving.* In other words, *I think she will have a good recovery from the nerve injury to the leg.*

Notes of Testimony, June 16, 1980, Civil Action—Law, No. 78-S-1679; *Brandt v. Copp,* pages 46-48; R.R., pages 186a-188a (emphasis added).

This testimony from the first trial seems quite clear that the expert testimony foresaw rehabilitation leading to a possible 50% recovery of the neck injury and a "good recovery" from the nerve injury to the leg. The trial court recognized this, in its last opinion in stating:

The doctor said plaintiff would recover, but have a 50% permanent disability. Proposed testimony in the present trial would indicate that Plaintiff is 100% disabled.

Opinion, Chronister, J., dated November 27, 1989, filed November 28, 1989, page 2; R.R., page 123a. From this, it becomes apparent that the trial court, in its last analysis was looking at *concepts* of damages, i.e., pain and suffering, permanent disability, lost earning capacity, rather than the *extent* of injury or harm.

Moreover, it appears that the trial court was, at a minimum, confused as to the injuries, since it lumps together the expert testimony of Dr. Ryscavage with regard to the probable 50% disability to the neck with testimony from other witnesses on the probable poor recovery with respect to the leg. *Id.* at page 3. The fact that the court at the first trial "permitted the jury to consider future pain and suffering and future lost earning capacity" says absolutely nothing on the issue of whether the extent of the harm or injury presented at the first trial was the same, or different, from the extent of the harm or injury yet to be presented at the second trial.

The trial court has concentrated on determining that the jury was charged on various *areas* of tort recovery by the

first trial judge, rather than comparing the *facts* placed in evidence in the two cases. Of course, without a trial record in the case now on appeal, I cannot understand the basis of the Majority's no-merit finding on the issue of "same harm" as set forth in its footnote 2. What is the testimony or evidence on injury upon which the Majority and the trial court rely to conclude that the injury and the harm are the same? I have not found it.

The crux of Eagle's position on this appeal is summarized in Paragraph 8 of his Motion for Summary Judgment, wherein he avers:

8. Because the Plaintiff has made claim for the same injuries and disability in this case as in the case where she received a verdict that was reduced to judgment and then satisfied the judgment, the action against the Defendant physicians is barred by the satisfaction.

In order to prevail on the motion, Eagle would be required to support his motion by proving the nonexistence of any genuine issue of material fact, with the record being viewed in the light most favorable to Brandt, and all doubts as to the existence of a genuine issue of material fact being resolved against Eagle, the moving party. Pa.R.C.P. 1035(b), *Marks v. Tasman, supra.* In my view, the true value of the claim is a material fact which Eagle has himself, through his pleadings, placed at issue. The verdict in the first suit was for $145,000 and the settlement was for $25,000. The latter is not, in my judgment, "one satisfaction" of the former.

The failure of the trial court to marshall the *facts* in the first trial and to weigh and compare those *facts* with the *facts* to be established in the second trial constituted an abuse of discretion. The failure to require that the moving party prove the nonexistence of any genuine issue of material fact was an error of law. To equate "damages in the form of future pain and suffering, and her 100% permanent disability" with the legal requirement of the "same harm" was also an error of law.

In order for Eagle to prevail, he must demonstrate that the evidence to be presented in *this* case is identical to the evidence presented in the case brought against Theodore W. Copp. On my review, I know that Dr. Ryscavage testified in the first trial, along with a licensed physical therapist and an insurance actuary. I have searched the certified record and have been unable to establish who the witnesses will be to testify against Dr. Eagle in the second trial.

One should be able to assume that expert testimony as to Brandt's physical condition as of any future trial date will be different from what it was on June 16, 1980, the date upon which the jury in the first case heard the testimony with respect to Brandt's then-existing injuries. And even if that condition has not changed in any material respect, the passage of time would permit different expert conclusions with respect to any prognosis. In either event, the second jury would not be looking at the "same harm."

Where the harm, or the injury, is different, Brandt should not be barred from continuing this second action. Where Brandt has only received $25,000 on a $145,000 verdict and judgment, this constitutes something substantially less than "one satisfaction." It is because I am unable to find either satisfaction or the same harm that I must respectfully dissent. I would reverse the order granting summary judgment and remand for trial.

McEWEN, OLSZEWSKI and DEL SOLE, JJ., join.